Good morning, Your Honor. May it please the Court. My name is Roxana Muro and I represent the petitioner, Elder Pleitez Marroquin. I would like to reserve two minutes for rebuttal time. Alright. Thank you. Your Honor, in this case, Mr. Pleitez has two, he filed two applications for relief before the Immigration Court. One of the applications was an application for asylum, withholding, and protection under the Convention Against Torture. And his other application was for a cancellation of removal for non-permanent residents. The immigration judge in this case denied both applications. I'd like to start with the application for cancellation of removal for non-permanent residents. Although this court does lack jurisdiction to review a discretionary determination, we submit that here we are not attacking the judge's discretionary determination. Instead, we submit that in this case, the judge, the immigration judge, was required to weigh all of the relevant evidence before this case and he did not do so. Specifically, Mr. Pleitez has three qualifying relatives. At the time, his children were one and three years old and then his father was a long-time lawful permanent resident. More importantly, his father suffered from major depressive disorder, moderate, recurrent. He also suffered from a generalized anxiety disorder. He was on medication. When the immigration judge reviewed the factors in this case and when he assessed the evidence, notably, and I'd like to point you to page 98 of his written decision, the immigration judge indicates that he's sympathetic to the record, however, that he could not find that the respondent's father had any compelling medical needs that could not be met if his son relocated to Guatemala and the judge cites Montreal. Counsel, how did that establish that the immigration judge failed to weigh all the evidence? Well, in this case, if you look at the immigration judge's decision, he says that he takes into consideration a February 12, 2018, psychiatric evaluation from Dr. Elsa Salguero, which had been admitted into evidence. That psychological report goes on to discuss Mr. Pleitas' father, Edgar Pleitas' major depressive disorder, the fact that he had become disoriented at times, that he even had to ask for directions, that he lived with his son, that he couldn't really even drive anymore. He depended on his son to take him to his medical appointments. So the judge references, and he goes on to cite the decision, but then his next sentence is, as a result of the evaluation, the psychologist diagnoses the respondent's father with major depressive disorder. And then he goes on to an analysis about whether or not the father would relocate to Guatemala, that he actually had a lot of financial assistance in the United States because he received disability benefits, he had a workers' comp case pending, that he received food stamps. However, there's no analysis regarding the resulting emotional hardship to Mr. Pleitas' father. It sounds more like how the judge weighed the evidence as opposed to whether he weighed the evidence. Exactly. I don't believe that the decision… But we can't review that. We can't review how the judge weighed the evidence. However, the court should at least be able to determine whether or not he weighed the evidence. And simply stating that he looked at the psychological report isn't sufficient. What case says that we have the authority to determine how much the immigration judge weighed the evidence? What case are you relying on? It isn't a case that says that we have to determine how much weight, because that would be getting into discretionary determination. So I understand that argument. However, the case that I'm relying on is Figueroa v. MacCasey, where the Ninth Circuit had found that the immigration judge in that case had committed legal error. And the legal error in that case were two issues. One, the judge did mistakenly identify the hardship as incongenable. We don't have that situation here. The other issue was that the immigration judge had looked at the compelling needs of the U.S. citizens and children in that case at the time the case was heard. And the Ninth Circuit said that when we're engaging in a hardship analysis, the court has to do a future-oriented analysis. And what we submit here is lacking is that the judge, simply by stating he looked at the psychological record, never engages into any analysis regarding whether or not there would be resulting emotional hardship if the petitioner was separated from his lawful permanent resident father. Due process requires that the court be able to have an understanding of how the judge arrived at the decision. So I'm not asking the court to look at how the judge balanced the factors. Our argument is that the court simply didn't even weigh the factor. There's no evidence that he weighed it. It kind of sounds like you're suggesting that the judge actually has to discuss each piece of evidence. I'm just not seeing where that comes from. I'm wondering whether you're going to talk about the asylum claim at all. Yes, I can move on to the asylum claim as well. In the asylum claim, the immigration judge also erred as to whether or not Mr. Plaitis had suffered past persecution. The immigration judge found the respondent credible. Mr. Plaitis testified that his father had fled to the United States because he had arrested a notorious gang member from Los Pasaco, that he had shot at him, and that these gang members came looking for his father. His father fled. After his father fled, six months to a year later, they're still continuing to look for his father. They arrive at the house. They're looking for him. They shoot outside the house. Mr. Plaitis was very young at the time. He was in the house. He was scared. He ends up fleeing to the United States. Six months later, Mr. Plaitis' grandfather, so his paternal grandfather, returns to Guatemala, at which time he is later decapitated. It's a very vicious murder. And these gang members leave a note behind that says, you know, we killed your father. You're next. You know, this is direct targeting of Mr. Plaitis' father's family, which we submitted was his particular social group. The judge found no past persecution. And we submit that that was erroneous because here this court has always found that sometimes death threats alone can constitute persecution. But here we have more than death threats alone. We have death threats. We have a violent confrontation. Mr. Plaitis was a child when he was, you know, a young adolescent when he was at his home. And these gang members came looking for his father and began shooting outside the home. There's attack on family members. Mr. Plaitis' grandfather was viciously murdered. There's another murder in 2008 with respect to Mr. Plaitis' cousin, who was also viciously murdered in a very similar manner to the way that his grandfather was murdered. Sorry to interrupt, but how do you deal with, and this is one of the things I think the immigration judge relied on, how do you deal with the fact that Mr. Plaitis' father, who was, I guess, under this theory the person primarily targeted, goes back to Guatemala a couple of times at least after all of this happens? How does that fit into the analysis? How do you deal with that, I guess, from your side? Well, I think that would sort of disturb the analysis of well-founded fear of future persecution, which we don't get to until we deal with past persecution. However, Mr. Plaitis' father does state that he makes three return visits, and they're brief. He goes for emergencies. He sort of says that he stays. He doesn't go out much. Nobody sees him. And they're trips that he had to absolutely make considering the emergency determination. So it's not that he voluntarily availed himself in Guatemala, spent large portions of time, was sitting around. He went for short visits. It was years later. And so I don't believe that it doesn't disturb the analysis regarding past persecution. It may affect well-founded fear, but we can't get there until we analyze past persecution. And I see I'm running out of time. You are, but I had one final question. You said that the past persecution determination was erroneous, but our standard of review is substantial evidence. Does that change your argument at all? I do believe that it doesn't change because substantial evidence does not support the immigration judge's finding. The judge found him credible. So if you find that Mr. Blake is credible, then that means that he believed that there was a note left behind after his grandfather was killed, that he was confronted when he was inside the home and the gang members came and shot outside the home looking for his father. I think that all of that evidence would directly lend its support to the conclusion that he had suffered past persecution. All right. Thank you, counsel. We'll hear from the government. Good morning, ma'am. Please support John Holt for the Attorney General. Substantial evidence supports the agency's decision denying protection and relief. Substantial evidence standard of review properly focuses the court on the decisional issue. Whether the petitioner failed to establish that a reasonable adjudicator would be compelled to conclude contrary to the agency decision, the facts in this case are related to four factors that inform the agency decision and should be helpful to this court in deciding this case. What happened? Who was involved? When it happened? And why it happened. What happened here? There's absolutely no dispute. The petitioner admitted at page 153 of the record that he was never personally harmed or directly threatened while he was in Guatemala. Secondly, while the focus is on the persecution of the father, the father is a former prison guard, the father was never harmed. At page 155 of the record, the petitioner states and admits that he never heard that his father was harmed. The court was sensitive to the situation. The petitioner, indeed, was a child when someone came to the house and shot, made some shots, and made some threats. But the court properly noted that, and the petitioner concedes at page 10 of the reply brief, this petitioner has clearly rehabilitated from this, quote, single alleged criminal incident. So there's no lasting trauma and none of the factors that implicate trauma to a child which may establish past persecution. Most importantly, let's look at what happened to the other members of the family. It was five years after the father left Guatemala and after petitioner had already left Guatemala that, unfortunately, the grandfather was killed. It was 2013 when another family member was beaten and 2008 when a cousin was killed. So there is no evidence to establish that there was persecution to anyone, either petitioner or his father, while they were in Guatemala. So if we move from what happened to who, we see that the agency properly determined that these were unidentified and unknown persons that were involved. Petitioner admitted that he did not know whether the gang that was allegedly involved was still active in Guatemala. There's no evidence that the same people were connected in any of the incidents. For example, at page 159 and 205 of the record, petitioner engaged in conjecture because both the father and the cousin were killed by machetes, although years apart, almost a decade apart, that they were killed by the same persons. But he admitted that, and this is his quote at page 205 of the record, I'm not sure that it was the same people, not sure that it's the same, but possibly. Can I interrupt you for a second? Can I interrupt you for a second? So you've got these four incidents, which admittedly don't directly involve any harm to either Mr. Pleitez or his father, but they're four incidents about family members. The connecting factor to Mr. Pleitez is this note, and the immigration judge doesn't say I don't believe that. To the contrary, he says he believes the testimony. And the note is testified as saying we've killed your father and now we're only missing you and your family. So I guess where I'm hung up and what I'm hoping you can help me out with is that it seems to me that if you look at all that together, there's all these incidents involving the family and the note threatening the family. Why wasn't that enough to connect the two and why isn't it, in the absence of substantial evidence or whatever the standard is, that the IJ doesn't really deal with that? The note really goes to why, Your Honor. So we've already addressed what and who, but now we turn to why. And we would invite the court to go to page 204 of the record. And page 204 really discloses that the note is problematic evidence for petitioning. What's important for the court to appreciate is there was never a note introduced into evidence. There was never documentary evidence of the note. Petitioner admitted that on page 225 of the record that he did not have the note. What you're saying now, how does that stand in juxtaposition with the IJ's express finding that the petitioner was credible? Credible means credible. It means he believed what he said about the note. Well, I invite the court to look at page 204 to establish there's not a document. And so what we're left with is we're left with the petitioner's testimony, and Your Honor is exactly right. The judge found petitioner credible. But then the judge at page 89 of the record specifically states that he considered the totality of the testimony. And in stating that, that included the testimony regarding the note. And more importantly, at page 91 of the record and the board at page 5, addressed the substance of the note, that is the alleged threats made by the unknown individuals and the fact that the note addressed the death threat to the grandfather. So the other circumstance that we invite Your Honor to consider regarding this missing note is that it really doesn't help petitioner because it doesn't establish a connection between anything that happened to him and a protected ground. The note does not say anything about the father being a former police officer. The note doesn't say anything about the father shooting an inmate. It doesn't say anything why the grandfather was killed or why they were seeking other family members. It doesn't state any motive and does not connect to any reason either in an event or actions or beliefs of members of the family. You're never going to have that kind of evidence unless somebody is able to coax a gang member into coming up from Guatemala and testifying at the hearing, which isn't going to happen. I mean, that's what circumstantial evidence is all about. We're targeting you. We've got your grandfather. Now we're going for the rest of your family. I mean, let me just ask a direct question. Are you saying that the IJ and the board essentially found that there was no note? No, Your Honor. Okay. No, we're not saying that. We're saying that the record clearly established there was no document. And so what the court was left with evaluating was the evidence of petitioner regarding the note. And so we go to that oral evidence and it's problematic petitioner because it doesn't establish a nexus. It doesn't establish who the actors were. It doesn't establish a political opinion by the father. It doesn't say why and any reason that the grandfather was killed or why they were searching for the father. The note could have said, your father shot at a gang member. We're going to take him out. The note doesn't say we took the grandfather out because he's the father of the former police officer. So there's no connection to the family or protected ground in the plain words of the note. And then finally, if we look at the crowd. If I may ask a question, the IJ said the petitioner was credible, but the IJ also then says that some of the testimony was self-serving and speculative. Based on that, do we have to accept or infer that the IJ found every aspect of the petitioner's testimony to be true and credible? How do we address that with that kind of finding by the IJ in terms of credibility but self-serving and speculative? The Supreme Court made it clear recently in the Dodd opinion that with regard to credibility issues, the court can make a finding of credibility but not accept the entire testimony and can identify problematic aspects of the petitioner's testimony. And that's what we would say the immigration judge did here. And with respect to the note, I just want to understand your argument with respect to that. So what's your argument with respect to the note? You said you're not doubting that the note existed, but are you saying the IJ questioned the contents of it? Can you clarify that? We're saying that the court properly considered the problematic aspects of the note, the failure of the note to detail a nexus with regard to the family or a protected ground as the basis for any mistreatment to the family. And then finally, if you look at the chronology of events, nothing happened to the petitioner or his father while they lived in Guatemala. And then the petitioner left. And then he left in 1994. And then after he left, his grandfather was killed. After he left in 2008, he'd been in America for 14 years when his cousin was killed. And then in 2013, his family sibling was mistreated. The father said it, page 271. And finally, as was pointed out, the petitioner's father has returned to Guatemala three times. He is the focus of the alleged gang interest. And he's been there three times, stayed several weeks. On pages 213, 272 through 273, he said he'd been there three times, stayed weeks, never had any problems at all. And he has siblings that continue to live unharmed. We say those circumstances, who, what, when, where, how, and why establish substantial evidence to support the agency's denial. There's no jurisdiction over the cancellation of a removal application. Can you tell me again the page where he talks about weeks? You just said it. I didn't quite catch it. 213? 213 and 272 through 273. That establishes the number of times he visited and the fact that he was unharmed and the fact that he was there a couple of weeks, several weeks. Thank you. All right, thank you, Counsel. You've exceeded your time. Unless there are more questions, we will turn to rebuttal. Rebuttal? Yes, Your Honors, thank you. With respect to past persecution, as noted earlier, the immigration judge did find Mr. Bledis credible. He did accept that these people had left a note informing him about his grandfather's death and saying to him that now we're only missing you and your family. That is Mr. Bledis's main argument is that, you know, these individuals wanted to come after his father. They had harassed him, causing his father to depart. They had shot outside his home looking for his father. They murdered his grandfather. So the threats were not unfulfilled. There actually was violence. And so we submit that in this case the agency's decision is not supported by the immigration judge's decision. In fact, the evidence in this record compels a conclusion that Mr. Bledis suffered past persecution. Counsel, you cited Figueroa as your strongest case. Could you point me to the specific language in Figueroa that you feel supports your arguments most strongly? For the 42B case in Figueroa, the immigration, the Ninth Circuit says that the- What page are you on? I'm on page, I believe, 497, Your Honor, 498. Okay. Where the court discusses future-oriented analysis, not an analysis of their present conditions. And so in that case, the court may say, well, I know that he has major depressive disorder, but there's no future-oriented analysis regarding whether or not Mr. Bledis's father's major depressive disorder, what's that going to do to him, whether there's going to be decompensation, what deleterious effect it would have. There's simply no analysis in his decision. All right. Thank you, Counsel. Did you want to sum up? Yes, Your Honor. We would submit that the court would have to remand for the court to review all factors and as far as the asylum claim, we would request that it be remanded with a finding of past persecution. Once we meet the past persecution, then the court can assign to the government whether or not they can rebut their presumption of well-founded fear. All right. Thank you, Counsel. Thank you to both counsel for your helpful arguments. The case is submitted for decision by the court.
judges: RAWLINSON, LEE, Kennelly